IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:13-CV-115-D

| | |
|---|---|
| JASMINE DENISE CLARK, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-17, DE-21] pursuant to Fed. R. Civ. P. 12(c). Claimant Jasmine Denise Clark ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied and Defendant's Motion for Judgment on the Pleadings be granted, upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant received SSI benefits based on disability as a child beginning on May 29, 2002. (R. 13, 22-24). After Claimant attained age 18 on June 11, 2010, her eligibility for SSI benefits was redetermined, as required by 42 U.S.C. § 1382c(a)(3)(H), applying the criteria used in determining eligibility for individuals who are age 18 or older. On November 15, 2010, it was determined that Claimant ceased to be disabled on November 1, 2010. (R. 13, 25-27). Claimant's request for

reconsideration filed on November 29, 2010, was denied on October 13, 2011. (R. 35, 50-62.) Thereafter, Claimant filed a written request for hearing on October 26, 2011. (R. 13). A hearing before the Administrative Law Judge ("ALJ") was held on September 19, 2012, at which Claimant was represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 566-83). On October 10, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 13-21). On March 27, 2013, the Appeals Council denied Claimant's request for review. (R. 7-9). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ

2

analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges that the ALJ erred by improperly assessing Claimant's credibility. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-18] at 11-14.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was eligible for SSI benefits as a child for the month preceding the month in which she attained age 18 and, based on a redetermination of disability under the rules for adults who file new applications for SSI benefits, Claimant was notified that she was found not disabled as of November 2, 2010. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: "insulin dependent diabetes mellitus; borderline intellectual functioning; and a mood disorder/history of oppositional defiant disorder." *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In particular, the ALJ noted that, "for the most part, aside from times of non-compliance by the claimant in taking her prescribed diabetic medications, the claimant's impairments have been well-controlled and have not resulted in any significant objective findings upon examination meeting the requirements of any Listing." (R. 17). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in her activities of daily living and moderate difficulties in social functioning, concentration, persistence and pace with no episodes of decompensation. (R. 16).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations: performance of simple, routine,

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially

4

repetitive tasks; avoidance of concentrated exposure to hazards and temperature extremes; occasional engagement in postural activities; and occasional interaction with co-workers, supervisors, and the general public. (R. 17). In making this assessment, the ALJ found Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms not fully credible. (R. 17-19). At step four, the ALJ concluded Claimant has no past relevant work. (R. 19). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined that there are employment opportunities that exist in significant numbers in the national economy that Claimant can perform. (R. 19-20).

## B. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 20 years old and unemployed. (R. 15, 567). Claimant is a high school graduate. (R. 46, 571). Claimant was last employed with "Bo's Supermarket" part-time for approximately three weeks in May 2011 where her duties included cashiering and stocking. (R. 569). Claimant has no other past work experience. (R. 570). Claimant explained numerous medical conditions supporting her disability claim and her inability to work full-time. (R. 569-81). These medical conditions include insulin dependent diabetes mellitus, borderline intellectual functioning, and a mood disorder/history of oppositional defiant disorder. *Id.* Claimant testified that she is unable to work because she is a diabetic with a blood sugar level that fluctuates drastically and is difficult to control with medication. *Id.* Claimant further testified that, as a result of her medical condition, she has frequent episodes where she: "blank[s] out"; shakes; experiences weakness; gets dehydrated; urinates excessively; needs medical

---

all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

attention or ambulance; and is unable to focus or concentrate. *Id.* Claimant also testified that her blood sugar level tends to drop with an increase in activity and that she has to check her blood sugar level at least four times per day, which takes about "30 minutes or less" each time. *Id.* Claimant then stated that she has to give herself two injections of insulin per day to bring her blood sugar level down and a "sliding scale" or Novolog injection if her symptoms indicate her blood sugar level is too high. *Id.*

## C. Vocational Expert's Testimony at the Administrative Hearing

Kerry Washington testified as a VE at the administrative hearing. (R. 581-83). After the VE testified that Claimant's past work was unsuccessful and not considered substantial gainful work activity (R. 581), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked the following hypothetical question:

> [a]ssume that you have a person, young person 20 years of age, high school education, this person would be limited to a full range of light work within the meaning of the Dictionary of Occupational Titles; however, this person would be further limited to occasional postural activities, a need to avoid concentrated exposure to hazards or temperature extremes. This person would further be limited to simple, routine, repetitive kinds of tasks with occasional interaction with co-workers, supervisors, and the public. Would a person with those limitations -- would there be work which would accommodate those kinds of limitations?

(R. 581-82). The VE responded that there would be work to accommodate an individual with such limitations, including the jobs of linen grader (light, unskilled work activity) (DOT # 361.687-022); merchandise or price marker (light, unskilled work activity, SVP of 2) (DOT # 209.587-034); and folder (light, unskilled work activity) (DOT # 369.687-018). (R. 582).

Second, the ALJ asked the VE what effect the additional limitation of difficulty concentrating one or two hours during the workday would have on the same hypothetical individual's ability to

6

perform the identified jobs. *Id.* The VE responded that the additional limitation would preclude the identified jobs and any other substantial gainful work activities. *Id.* In response to questioning by Claimant's counsel, the VE testified that the hypothetical individual would not be able to perform any of the identified jobs if the individual was limited to no more than occasional standing and walking. (R. 582-83).

## V. DISCUSSION

Claimant contends that the ALJ improperly assessed Claimant's credibility. Pl.'s Mem. at 11-14. First, Claimant argues that the ALJ erred by relying on evidence of Claimant's medical noncompliance, predating her attainment of age 18, to support his credibility finding. *Id.* Second, Claimant asserts that the ALJ erred by failing to consider, and by making findings inconsistent with, Claimant's testimony about her functional limitations. *Id.*

It is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulation 20 C.F.R. § 416.929(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *See Craig*, 76 F.3d at 593-94. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ must evaluate the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *See Craig*,

7

76 F.3d at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *3.

The ALJ found that Claimant had medically determinable impairments reasonably capable of causing some of Claimant's subjective symptoms, but concluded Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the RFC assessment. (R. 17-18). In reaching this conclusion, the ALJ noted that Claimant's "increase in symptoms stems from non-compliance, which is a bar to disability. (Exhibit 20F). Similarly, when compliant, the claimant has normal physical examinations. (Exhibit 12F)."[2] (R. 18, 492-495, 560). The ALJ also suggested that Claimant's testimony regarding her activities of daily living is evidentiary support for his credibility determination. *Id.* In particular, the ALJ notes: "[a]fter being asked about prior admissions of

---

[2] Exhibit 12F is the record of a consultative examination on October 20, 2010, where Claimant's blood glucose level measured in the normal range and there was no evidence indicating Claimant was noncompliant during that time. (R. 492-495). Exhibit 20F is a Physical RFC assessment completed by a State-agency medical consultant, Dr. E. Woods, on January 27, 2011, referencing several medical records, where Claimant was deemed noncompliant with either dietary or medical regimens, to support his conclusion that Claimant's statements regarding her functional limitations are not fully credible and that medium functional ability is "still appropriate." (R. 553-560).

8

playing basketball, dating, and performing chores, she indicated that she sometimes performs these activities." *Id.*

First, Claimant contends that the ALJ improperly considered evidence in the record predating Claimant attaining age 18. Pl's Mem. at 11-14. However, Claimant cites no case law in support of this argument, nor has the court found any such authority limiting the ALJ's consideration of a minor's medical records. An ALJ is required to "consider all evidence in [the claimant's] case record when [making] a determination or decision whether [the claimant] is disabled." 20 C.F.R. § 404.1520(a)(3); *Stemple v. Astrue*, 475 F. Supp. 2d 527, 534 (D.Md. 2007); *see also* 20 C.F. R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive"). Furthermore, in assessing functional limitations, the ALJ must consider "all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. § 404.1520a(c)(1); *see also Corcoran v. Astrue*, No. CIV.SKG-08-913, 2009 WL 3100350 (D.Md. 2009) (citing *Arnold v. Sec'y of Health, Educ. and Welfare*, 567 F.2d 258, 259) (4th Cir. 1977)). The ALJ in this case made his findings "after careful consideration of the entire record" (R. 15) as he was required to do.

Indeed, the court in *Rhodes v. Colvin*, an age 18 redetermination case where the plaintiff had a history of diabetes mellitus and borderline intellectual functioning, upheld an ALJ's finding that the claimant's testimony regarding work-related capacity was not fully credible, despite the ALJ's reliance on a psychological assessment by a medical expert who considered the claimant's childhood IQ scores in determining that claimant's mental deficiencies were not so severe as to constitute or contribute to an overall disability. No. 7:12-CV-579, 2013 WL 4930181, at *2 (W.D. Va. Sept. 12, 2013). Like *Rhodes*, the ALJ in the present case properly found Claimant not fully credible, relying

9

on an assessment by State-agency medical consultant, Dr. E. Woods, who considered Claimant's childhood medical records of noncompliance in determining that Claimant's statements regarding her functional limitations are not fully credible.[3] (R. 560). Furthermore, the ALJ properly explained the relationship between Claimant's noncompliance and increase in symptoms and compliance and normal physical examination. (*See* R. 560) ("[f]or the most part, aside from times of non-compliance by the claimant in taking her prescribed diabetic medications, the claimant's impairments have been well-controlled and have not resulted in significant objective findings upon examination . . . ." The ALJ's determination that Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms are not fully credible is supported by substantial evidence. (R. 17-18). The ALJ "considered the entire record" and gave specific reasons, citing Exhibit 20F and Exhibit 12F, supported by the evidence, for discounting Claimant's statements. (R. 18-19, 492-495, 560). Thus, the ALJ did not err in relying on Claimant's noncompliance as a basis to discount her testimony concerning the intensity, persistence, and limiting effects of her symptoms.

Next, Claimant argues that the ALJ erred by failing to consider, and by making findings inconsistent with, Claimant's testimony about her functional limitations. Pl's. Mem. at 12-14. Claimant's argument is misplaced. The ALJ explained:

> In activities of daily living, the claimant has mild restriction. On August 7, 2010, the claimant reported to David C. Johnson, M.A. and Edward Crane, Ed.D. that she could perform housework, cut the grass, play basketball, and date. She reported that she had adequate energy for daily activities. (Exhibit 11 F). At the hearing, the claimant indicated that she could perform the above-mentioned activities "sometimes" and that her boyfriend must come to see her, which is given some

---

[3] Notably, it was not the ALJ, but Dr. Woods, a medical expert, who—in January 2011—made the connection between Claimant's noncompliance and her functional limitations after November 1, 2010. Accordingly, the ALJ properly considered Claimant's noncompliance records to be relevant to the disability redetermination and reasonably relied on Dr. Woods' assessment in determining Claimant's noncompliance contributed to her alleged functional limitations. (R. 560).

10

weight. As a result, the undersigned finds that the claimant has mild restrictions in activities of daily living.

(R. 560). Not only does the ALJ address Claimant's testimony concerning her functional limitations, he gave specific reasons for discounting her testimony and cited reports by Claimant contradicting her testimony. (R. 18-19, 560). The court's duty is to determine if substantial evidence supports the ALJ's conclusions–not to reweigh conflicting evidence. *Mastro*, 270 F.3d at 176 (citation omitted). The ALJ's resolution of the pertinent conflicts in the record in this case is supported by substantial evidence, and the ALJ did not err in this regard.

In sum, the ALJ's reasons for finding Claimant's testimony not credible and his analysis of factors where the medical evidence and Claimant's subjective complaints are not in accord constitute an appropriate and complete consideration of Claimant's credibility, and demonstrates substantial evidence supporting the ALJ's determination that Claimant is not as functionally limited as she claims. Accordingly, the ALJ did not err in his credibility determination.[4]

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-17] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-21] be GRANTED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the

---

[4] The court notes that, in the ALJ's decision in the paragraph beginning "Finally, . . ." (R. 17 at ¶ 4), the ALJ erroneously included a list of impairments that do not correspond to the instant Claimant. This portion of the ALJ's decision also refers to the female Claimant as a male. Specifically, the ALJ states "Finally, Moreover, the undersigned considered the combined effects of the claimant's impairments including his degenerative disc disease, hypertension, obesity, and depressive disorder . . .". Nevertheless, the court's decision is not altered by this inaccuracy, as the ALJ's decision is otherwise supported by substantial evidence. The inaccuracy does not impact the ALJ's analysis and the mishap was not raised by Claimant.

11

respective parties, who have ten (10) days upon receipt to file written objections, response to which (if any) must be made within seven (7) days upon receipt of the written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 21st day of August 2014.

Robert B. Jones, Jr.
United States Magistrate Judge